1  Jordon R. Harlan, Esq. (SBN 273978)
       jordon@hhdlaw.com
2  Andrew E. Hillier, Esq. (SBN 295779)
       andrew@hhdlaw.com
3  Francis DiGiacco, Esq. (SBN 265625)
       frankie@hhdlaw.com
4  **HARLAN HILLIER DIGIACCO LLP**
5  701 Island Ave., Second Floor
   San Diego, CA 92101
6  Telephone: (619) 330-5120
7  Facsimile:  (619) 839-3895

8  Attorneys for Plaintiff,
9  PAUL EADY

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL EADY, an individual;<br><br>Plaintiff,<br><br>v.<br><br>ORGANOGENESIS, INC., a Delaware Corporation; and ORGANOGENESIS HOLDINGS, INC., a Delaware Corporation.<br><br>Defendants. | Case No: 3:25-CV-0361-TWR-JLB<br><br>**FIRST AMENDED COMPLAINT FOR**<br><br>(1) **RETALIATION (Cal. Gov. Code § 12940(h))**<br>(2) **RETALIATION (Cal Lab. Code § 1102.5)**<br>(3) **FAILURE TO PREVENT RETALIATION (Cal. Gov. Code § 12940(k))**<br>(4) **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff PAUL EADY ("Plaintiff") alleges as follows:

**THE PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is an individual who, at all times relevant to this action, resided in the County of San Diego, State of California.

2. Plaintiff is informed, believes and thereupon alleges that Defendant Organogenesis is a Delaware corporation doing substantial business in the State of California.

3. Plaintiff is informed, believes and thereupon alleges that Defendant Organogenesis Holdings, Inc. is a Delaware corporation doing substantial business in the State of California.

4. Defendants Organogenesis, Inc. and Organogenesis Holdings, Inc. (collectively "Defendants" or "Organogenesis") were at all times herein mentioned: (a) conducting business in the Southern District of California; (b) the employer of Plaintiff consistent with the California Labor Code and Industrial Welfare Commission Wage Orders; and (c) Plaintiff's employer as defined under Government Code §12926(d). At all times relevant herein, Defendants employed more than five employees.

5. The acts alleged herein arose in the Southern District of California.

6. Plaintiff is informed, believes, and thereupon alleges that each Defendant is, and at all times relevant herein was, the agent of his, her or its co-defendants, and in committing the acts alleged herein, was acting within the scope of his, her or its authority as such agent, and with the knowledge, permission and consent of his, her or its co-defendants.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

7. Plaintiff timely submitted a complaint to the California Civil Rights Department concerning all relevant claims herein and received a Right to Sue Letter on February 18, 2025, Matter No. 202502-28121413. This action is brought less than one year following Plaintiff's receipt of said letter.

# GENERAL ALLEGATIONS

8. Organogenesis is a medical manufacturer, providing clinicians with tissue products for skin wounds, surgeries, and sports medicine.

9. Organogenesis is a nationwide conglomerate with offices in California, Alabama, Florida, and Massachusetts. Organogenesis employs approximately 900 people.

10. On May 17, 2017, Organogenesis hired Plaintiff as Associate Director of Sales in Sales Operations.

11. In or around April 2022, Organogenesis promoted Plaintiff to Senior Director of Sales Operations (National). As Senior Director of Sales Operations, Plaintiff's duties and responsibilities involved overseeing the operational function of Organogenesis's sales department, guiding evolving policies and strategy of a sales force of approximately 400 employees. Plaintiff was also heavily involved in internal financial reporting and unit and revenue trends analysis.

12. At all times, Plaintiff performed his work in a competent and capable manner, as recognized by Organogenesis through consistently positive performance reviews and multiple raises.

13. As Senior Director of Sales Operations, Plaintiff's immediate supervisor was Justin Larrick, Vice President of Sales.

14. On March 5, 2024, following a conversation regarding work, Christy Deegan, a female Area Director of Sales at Organogenesis, reported to Plaintiff that Larrick propositioned her for sex on two occasions at a work event in San Diego, California, despite her attempts to reject his advances. Deegan also shared with Plaintiff that Larrick continued to make her uncomfortable through his behavior during her interactions with him.

15. Deegan shared that she was afraid to report Larrick to Human Resources for fear of retaliation, and for fear that Organogenesis would not stop or admonish Larrick.

16. Plaintiff told Deegan that he believed he was obligated to report the harassment to Organogenesis. Deegan asked Plaintiff to give her a few days to think about it.

17. On March 6, 2024, another female Area Director of Sales, Dana Gelly, called Plaintiff. Gelly became very emotional and started crying.

18. Gelly told Plaintiff that she knew Deegan had reported Larrick's sexual harassment to Plaintiff, and she wanted to tell Plaintiff that Larrick had also sexually harassed her.

19. Gelly told Plaintiff that she experienced an incident with Larrick that involved unwanted touching.

20. Gelly also told Plaintiff she was afraid to come forward for fear of putting her career and Deegan's career at risk, but knew that since Deegan had reported to Plaintiff, Plaintiff would likely report Larrick's sexual harassment.

21. Per Organogenesis's policies, Plaintiff reported the sexual harassment.

22. On March 6, 2024, Plaintiff emailed Senior Director, Human Resources, Renee Blaine and Director of Talent Acquisition Meghan Watson, stating "in the past 48 hours two separate field employees confided some serious claims of harassment with me." Plaintiff ended the email, "Let me know if there are any other actions that you would like me to take."

23. The next day, on March 7, 2024, Deegan and Gelly told Plaintiff they had reported Larrick's harassment to Gelly's immediate supervisor Darren McBee. Plaintiff referred Deegan and Gelly to the handbook and explained its instructions were to report the harassment to HR and/or to the Chief Executive Officer. Gelly said that she was planning to report the sexual harassment directly to CEO Gary Gillheeney, Sr.

24. Later that day, McBee called Plaintiff.

25. In addition to telling Plaintiff about Larrick's sexual harassment that Deegan and Gelly confided in him, McBee shared examples of Larrick's conduct that McBee felt were verbally and physically abusive.

26. McBee reported an incident at a company dinner in which Larrick became progressively aggressive toward McBee, encroached on McBee's space, and threatened him. McBee reported that Larrick battered McBee during this interaction.

27. On Plaintiff's information and belief, the next day, March 8, 2024, Deegan and Gelly reported Larrick's sexual harassment to Organogenesis on a phone call with CEO Gary Gillheeney.

28. On Plaintiff's information and belief, that same day, March 8, 2024, McBee reported Larrick's sexual harassment to Organogenesis on a phone call with CEO Gary Gillheeney. He also reported his own allegations which included, but were not limited to, the physical assault.

29. That same day, March 8, 2024, Gillheeney requested that Plaintiff call him.

30. Plaintiff called Gillheeney. The phone call lasted approximately 15 minutes.

31. Plaintiff told Gillheeney about the sexual harassment Deegan and Gelly reported.

32. Plaintiff also shared with Gillheeney an incident in which Larrick took his subordinate male employees to a strip club.

33. Gillheeney asked Plaintiff if he thought Larrick had a drinking problem.

34. Plaintiff responded that whether sober or drunk, Larrick's behavior is unacceptable.

35. Gillheeney also asked how Larrick's immediate supervisor Brian Grow, Chief Commercial Officer, could be unaware of Larrick's harassment.

36. Plaintiff responded that Larrick's harassing behavior comes out toward his subordinates, not his superiors.

37. Gillheeney ended the call by saying he would personally lead the investigation into Larrick, which would be "swift, aggressive, and transparent" or similar words.

38. On March 12, 2024, Organogenesis's Chief Administrative and Legal Officer Lori Freedman emailed Plaintiff that Larrick had been informed of the allegations against him, and that Organogenesis instructed Larrick not to communicate with Plaintiff. Freedman stated that Organogenesis was investigating, and wrote, "If you would like to take additional paid time off, while we are conducting the investigation, please do so (but please be available for the investigation)."

39. Plaintiff was concerned that Organogenesis told Larrick that Plaintiff had reported him, putting a target on Plaintiff's back, particularly after Plaintiff had reported that Larrick was abusive and manipulative. Plaintiff also had no intention of taking off work, as he had done nothing wrong.

40. Organogenesis retained Foley Hoag to conduct the outside investigation into Larrick's conduct.

   a. On Plaintiff's information and belief, Foley Hoag previously represented Organogenesis and Organogenesis's employee Jeffrey Russo in a sexual harassment lawsuit by another Organogenesis employee. (*Thoms v. Russo,* Case No. 3:17-cv-00650, Southern District of Mississippi, filed August 7, 2017.)

   b. On Plaintiff's information and belief, similarly to the instant action, Traci Thoms alleged she was retaliated against by her supervisor, Jeff Russo, for attempting to resist illegal misconduct by Russo and Organogenesis.

   c. On Plaintiff's information and belief, Larrick was Russo's supervisor while *Thoms v. Russo* was pending (August 2017-October 2018).

   d. On Plaintiff's information and belief, Organogenesis twice promoted Russo after learning of the allegations in *Thoms v. Russo*.

   e. Russo was Deegan's supervisor at the time she was a victim of sexual harassment and when she reported it.

1           f.   On information and belief, Deegan had reported the sexual harassment to her direct supervisor, Jeff Russo.

            g.   On information and belief, Jeff Russo did not escalate the allegations or report them to Human Resources.

41. Organogenesis did not place Larrick on leave during the investigation.

42. Organogenesis instructed Plaintiff to report to Larrick's supervisor, Brian Grow. Grow was friendly with Larrick, and during the investigation, Organogenesis allowed Larrick to interact with Grow.

43. After Plaintiff's reporting of Larrick's conduct, Larrick began limiting Plaintiff's involvement in meetings on work topics that Plaintiff would have previously led or been heavily involved in.

44. Larrick was permitted to continue planning meetings, excluding Plaintiff and limiting Plaintiff's ability to perform his job duties.

45. On several occasions, Larrick was permitted to remain on a call (or videoconference) instead of Plaintiff, due to Larrick's higher position, preventing Plaintiff from performing his job duties.

46. Organogenesis failed to prevent Larrick from having any contact with Plaintiff.

47. Organogenesis failed to prevent Larrick from overtaking Plaintiff's job duties and blocking Plaintiff from performing his job duties.

48. Organogenesis failed to prevent Larrick from diminishing Plaintiff's authority in his role.

49. On March 19, 2024, Plaintiff reported his concerns about retaliation to Meghan Watson in HR.

50. The following day, on March 20, 2024, Plaintiff emailed Lori Freedman his concerns about retaliation:

    a.   "[Larrick] was informed that he was the subject of allegations and was also told who those allegations were made by.  I was included in those names,

even though I made no claim of my own abuse, but was reporting, per our handbook the harassment/abuse of others."

  b. "[Larrick] continues to work, it has been two weeks."

  c. "Retaliation is a legitimate concern and is a common occurrence in scenarios like these."

  d. "[T]he choice to keep [Larrick] working sends a signal…of disunity between corporate and those that struggled to come forward in the first place."

51. Plaintiff repeatedly complained to Grow that Larrick was taking over Plaintiff's role on finance calls, preventing Plaintiff from performing his job duties. Grow told Plaintiff, at least twice, "I'll get you back in there" or similar words, referring to the calls.

52. On or about March 28, 2024, Larrick scheduled and conducted a teleconference meeting called "Affinity Q2 phase out." He did not include Plaintiff. On Plaintiff's information and belief, one of the attendees, Norma Massarrotti, Supply Chain Assistant Vice President, noticed Plaintiff had been excluded. She scheduled a short notice video meeting with the essential people needed for the coordination of the Affinity phase-out plan, including Plaintiff and Larrick. Larrick joined the call and did most of the speaking.

53. On March 28, 2024, Plaintiff emailed Freedman again, reporting more retaliation by Larrick.

54. Plaintiff wrote, "[Larrick] is taking the lead on functions and communications that I would be normally leading or be heavily involved in."

55. Plaintiff stated, "Justin Larrick, who is being actively investigated for abuse against employees, <u>and who has been informed of my involvement</u> is now deliberately using his rank to cut me out of my work functions" (emphasis in original).

56. Freedman responded in an email that same day, "[W]e are going to instruct [Larrick] to excuse himself from meetings or calls in which you are both

expected participants." Freedman continued, "Could you please let me know the meetings or calls, through next week (April 5), in which both you and [Larrick] are expected participants?"

57. Plaintiff replied, "[Larrick] and I are both scheduled to be on a revenue review call with Nick Buttafuoco (Teams host) on Wednesday April 3rd and then another on Fri the 5th hosted by Shu Jiang [VP of Finance]." Plaintiff continued, "I want to work each day and produce at the level I was hired to do, thank you for understanding."

58. Organogenesis did not ensure that Larrick excused himself from meetings or calls in which he and Plaintiff were both expected participants. Plaintiff and Larrick both continued to be invitees to the same meetings.

59. About 30 minutes prior to the April 3 meeting, Buttafuoco (Senior Manager, Financial Planning & Analysis) sent Plaintiff a message that he was instructed to cancel the call.

60. On April 3, 2024, Plaintiff had a call scheduled with Grow. Grow called Plaintiff a few minutes late and told Plaintiff that he had just dropped off a Finance call that he was surprised that Plaintiff was not on.

61. Plaintiff said that he was not aware of the call.

62. Plaintiff was not invited to participate in the call.

63. Grow told Plaintiff that he would sort it out and call Plaintiff right back.

64. When Grow called Plaintiff back, he told Plaintiff that Plaintiff was not needed on the call, explaining that "Justin [Larrick] is on that call. It's more important that he [Larrick] be on that call since he is still the VP of Sales."

65. Plaintiff expressed frustration that Organogenesis removed him from work calls, removed his duties, and minimized his role.

66. Grow did not refute Plaintiff's claims he was being removed from work calls, removed from his duties, or minimized in his role.

67. Plaintiff expressed concern about the pace, efficacy and purpose of the investigation into Larrick.

68. Grow did not indicate in any way that Organogenesis' treatment of Plaintiff would be modified to address Plaintiff's concerns.

69. Throughout the call, Grow demonstrated an indifference to Plaintiff's complaints.

70. In concluding the call, Plaintiff stated that he believed it was best to speak about the Larrick investigation only through Foley Hoag (Organogenesis's outside counsel conducting the investigation) and ended the call. The call lasted approximately five minutes.

71. On April 5, 2024, Renee Blaine, Senior Director of Human Resources, sent Plaintiff a letter.

72. In the letter, Organogenesis claimed that on the April 3 call with Grow, Plaintiff "yelled at" and "threatened him." Organogenesis stated it would review the incident and referred Plaintiff to the employee handbook section about workplace bullying.

73. That same day, Plaintiff emailed Blaine a response. Plaintiff stated: "The call with Brian [Grow] did not occur as described. I did voice my frustration about being pushed out of work calls and being minimized in my role since I reported sexual harassment. I have been expressing these concerns since March 20th when I emailed Lori [Freedman]."

74. Plaintiff further explained: "A month ago I reported sexual harassment of two female employees whom felt afraid to speak up…The timing of Brian's inaccurate portrayal of yesterday's call is not a coincidence. It falls in line with the intimidation and retaliation that occurs in these types of situations."

75. Plaintiff offered to join a call with Blaine and Grow to clear up Grow's allegations.

76. Plaintiff ended the email stating "It's also concerning that on a call with no witnesses I've suddenly been characterized as a threat or a bully. I've never been described as either of these things in my life."

77. Organogenesis did not interview Plaintiff to obtain his recollection of what transpired on the call with Grow.

78. On April 8, 2024 (the next business day), Organogenesis terminated Plaintiff, citing the reasons listed in the April 5, 2024 letter.

79. Organogenesis's purported reason for Plaintiff's termination is pretext, and the real reason is retaliation for Plaintiff's reports of sexual harassment and retaliation.

80. On information and belief, shortly after receiving notice that Deegan, Gelly, and McBee may file lawsuits, Organogenesis terminated Larrick.

81. On information and belief, on or about August 14, 2024, Gelly resigned from her position at Organogenesis.

82. On information and belief, on or about September 3, 2024, Deegan resigned from her position at Organogenesis.

83. On or about September 3, 2024, McBee, was disciplined by Grow for unprofessional conduct. McBee was notified he may be subject to termination in the future.

84. On September 7, 2024, McBee informed Organogenesis of his resignation stating: "This email is to inform you of my resignation, effective September 20, 2024, due to constructive termination, a hostile work environment, and recent unwarranted threats of termination, as well as other retaliatory acts which began after I reported sexual harassment in my capacity as a supervisor and mandatory reporter in March 2024."

85. At all relevant times mentioned above, until his termination, Justin Larrick was a managing agent of Organogenesis.

86. At all relevant times mentioned above, Brian Grow was a managing agent of Organogenesis.

87. At all relevant times mentioned above, Lori Freedman was a managing agent of Organogenesis.

88. At all relevant times mentioned above, Gary Gillheeney was a managing agent of Organogenesis.

## FIRST CAUSE OF ACTION

**(Retaliation in Violation of Cal. Gov. Code 12940(h) Against All Defendants)**

89. Plaintiff incorporates by reference each and every allegation in all previous paragraphs of this Complaint as if fully set forth herein.

90. California's FEHA protects employees from retaliation in the workplace. Specifically, Cal. Gov. Code § 12940(h) prohibits employers from retaliating against an employee for opposing "practices forbidden under" the FEHA.

91. Plaintiff engaged in protected activity when he reported Larrick's sexual harassment of employees to Organogenesis.

92. Plaintiff engaged in protected activity when he reported Organogenesis's retaliation of Plaintiff in response to his reporting of Larrick's sexual harassment.

93. Plaintiff disclosed to Organogenesis's Human Resources Department that Organogenesis was deliberately retaliating against Plaintiff because he reported Larrick's sexual harassment.

94. Plaintiff disclosed to his supervisor, Brian Grow, Organogenesis was deliberately retaliating against Plaintiff because he reported Larrick's sexual harassment.

95. Plaintiff disclosed to General Counsel for Organogenesis, Lori Freedman, Organogenesis was deliberately retaliating against Plaintiff because he reported Larrick's sexual harassment.

96. Thereafter, Organogenesis subjected Plaintiff to adverse employment actions, including removing Plaintiff's duties, responsibilities, and authority,

terminating his employment, and otherwise discriminating against him in the terms and conditions of his employment.

97. Organogenesis's actions were substantially motivated by Plaintiff's protected activity. The retaliatory course of conduct started almost immediately after Plaintiff's reported harassment and continued throughout his employment until its termination.

98. As a direct, foreseeable, and proximate result of Organogenesis's actions, Plaintiff suffered economic damages including lost wages, salary, performance bonuses, retirement income, and certain other benefits, including incidental and consequential losses.

99. As a direct, foreseeable, and proximate result of Organogenesis's actions, Plaintiff suffered emotional injury, mental distress, shock, humiliation, loss of reputation, and worry of a lasting nature.

100. Organogenesis was aware of the probable legal consequences of its conduct and willfully and deliberately failed to remedy or prevent against those consequences. This conduct was ratified or supported by Organogenesis's managing agents. Organogenesis's conduct constituted malice, oppression or fraud such that Plaintiff is entitled to punitive and exemplary damages in an amount to punish Organogenesis or to set an example.

## SECOND CAUSE OF ACTION

**(Retaliation in Violation of Cal. Lab. Code § 1102.5 Against All Defendants)**

101. Plaintiff incorporates by reference each and every allegation in all previous paragraphs of this Complaint as if fully set forth herein.

102. California Labor Code § 1102.5 prohibits employers from retaliating against an employee for disclosing information the employee reasonably believes discloses a violation of law or noncompliance with a regulation, to a person with authority over the employee or an employee who has the authority to investigate, discover or correct the violation or noncompliance.

103. Plaintiff engaged in protected activity when he reported Larrick's sexual harassment of employees to Organogenesis. Further, Plaintiff engaged in protected activity when he disclosed to Organogenesis that Larrick was deliberately retaliating against Plaintiff because he reported Larrick's sexual harassment. Plaintiff had reasonable cause to believe that the information he provided disclosed violations of state and federal statutes, including but not limited to the FEHA.

104. Thereafter, Organogenesis subjected Plaintiff to adverse employment actions, including removing Plaintiff's duties, responsibilities, and authority, terminating his employment, and otherwise discriminating against him in the terms and conditions of his employment.

105. Plaintiff's engagement in protected activity was a contributing factor in Organogenesis's decision to subject Plaintiff to said adverse employment actions. The retaliatory course of conduct started almost immediately after Plaintiff's reported harassment and continued throughout his employment until its termination.

106. As a direct, foreseeable, and proximate result of Organogenesis's actions, Plaintiff suffered economic damages including lost wages, salary, performance bonuses, retirement income, and certain other benefits, including incidental and consequential losses.

107. As a direct, foreseeable, and proximate result of Organogenesis's actions, Plaintiff suffered emotional injury, mental distress, shock, humiliation, loss of reputation, and worry of a lasting nature.

108. Organogenesis was aware of the probable legal consequences of its conduct and willfully and deliberately failed to remedy or prevent against those consequences. This conduct was ratified or supported by Organogenesis's managing agents. Organogenesis's conduct constituted malice, oppression or fraud such that Plaintiff is entitled to punitive and exemplary damages in an amount to punish Organogenesis or to set an example.

## THIRD CAUSE OF ACTION

**(Failure to Prevent Retaliation in Violation of Cal. Gov. Code 12940(k) Against All Defendants)**

109. Plaintiff incorporates by reference each and every allegation in all previous paragraphs of this Complaint as if fully set forth herein.

110. California's FEHA protects employees from retaliation in the workplace. Specifically, Cal. Gov. Code § 12940(h) prohibits employers from retaliating against an employee for opposing "practices forbidden under" the FEHA.

111. Moreover, specifically Cal. Gov. Code § 12940(k), prohibits an employer from failing to take all reasonable steps to prevent retaliation. *See* CACI 2527; *Taylor v. City of Los Angeles Dept. of Water and Power,* 144 Cal.App.4th 1216, 51 Cal. Rptr. 3d 206 (Cal. Ct. App. 2006).

112. Plaintiff engaged in protected activity when he reported Larrick's sexual harassment of employees to Organogenesis. Further, Plaintiff disclosed to Organogenesis's Human Resources Department that Larrick was deliberately retaliating against Plaintiff because he reported Larrick's sexual harassment.

113. Thereafter, Organogenesis retaliated against Plaintiff because of this protected activity by, among other things, removing Plaintiff's duties, responsibilities, and authority, terminating his employment, and otherwise discriminating against him in the terms and conditions of his employment.

114. Organogenesis's actions were substantially motivated by Plaintiff's protected activity. The retaliatory course of conduct started almost immediately after Plaintiff's reported harassment and continued throughout his employment until its termination.

115. Organogenesis failed to take all reasonable steps to prevent retaliation.

116. As a direct, foreseeable, and proximate result of Organogenesis's actions, Plaintiff suffered economic damages including lost wages, salary, performance

bonuses, retirement income, and certain other benefits, including incidental and consequential losses.

117. As a direct, foreseeable, and proximate result of Organogenesis's actions, Plaintiff suffered emotional injury, mental distress, shock, humiliation, loss of reputation, and worry of a lasting nature.

118. Organogenesis's failure to take all reasonable steps to prevent retaliation was a substantial factor in causing Plaintiff's harm.

119. Organogenesis was aware of the probable legal consequences of its conduct and willfully and deliberately failed to remedy or prevent against those consequences. This conduct was ratified or supported by Organogenesis's managing agents. Organogenesis's conduct constituted malice, oppression or fraud such that Plaintiff is entitled to punitive and exemplary damages in an amount to punish Organogenesis or to set an example.

## FOURTH CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy)

120. Plaintiff incorporates by reference each and every allegation in all previous paragraphs of this Complaint as if fully set forth herein.

121. Plaintiff's employment was terminated in violation of fundamental public policies of the State of California including, without limitation, Cal. Gov. Code § 12940 and Cal. Labor Code § 1102.5. These fundamental public policies inure to the benefit of the public, and do not just the private interests of the employer and employee.

122. As set forth above, Organogenesis's actions, including the termination of Plaintiff, were wrongful and in violation of the fundamental principles of the public policy of the State of California as reflected in its laws, objectives and policies.

123. As a direct, foreseeable, and proximate result of Organogenesis's actions, Plaintiff suffered economic damages including lost wages, salary, performance

1  bonuses, retirement income, and certain other benefits, including incidental and
2  consequential losses.
3     124. As a direct, foreseeable, and proximate result of Organogenesis's actions,
4  Plaintiff suffered emotional injury, mental distress, shock, humiliation, loss of
5  reputation, and worry of a lasting nature.
6     125. Organogenesis was aware of the probable legal consequences of its
7  conduct and willfully and deliberately failed to remedy or prevent against those
8  consequences. This conduct was ratified or supported by Organogenesis's managing
9  agents. Organogenesis's conduct constituted malice, oppression or fraud such that
10 Plaintiff is entitled to punitive and exemplary damages in an amount to punish
11 Organogenesis or to set an example.
12 ///
13
14 ///
15
16 ///
17
18 ///
19
20 ///
21
22 ///
23
24 ///
25
26 ///
27
28 ///

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1. For such general, special and compensatory, actual and liquidated damages described above in amounts to be proven at the time of trial;
2. For punitive and exemplary damages in amounts to be proven at the time of trial;
3. For lost wages according to proof, including but not limited to back pay and front pay;
4. For attorneys' fees and costs pursuant to Code of Civil Procedure § 1021.5, Labor Code § 1102.5(j) and Government Code § 12965, or as otherwise allowed by law and according to proof;
5. For costs of suit incurred herein;
6. For pre- and post-judgement interest at the maximum legal rate on all amounts claimed; and
7. For other and further relief as the Court may deem just and proper.

Dated: March 12, 2025                     Respectfully Submitted,

By:   */s/ Jordon R. Harlan*
      Jordon R. Harlan
      Attorney for Plaintiff,
      Paul Eady

# DEMAND FOR JURY TRIAL

Plaintiff Paul Eady hereby demands a jury trial for the causes of action set forth herein.

Dated: March 12, 2025  Respectfully Submitted,

By: */s/ Jordon R. Harlan*
Jordon R. Harlan
Attorney for Plaintiff,
Paul Eady